IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

IN RE:                                      )
                                            )
JOSEPH EDWARD MUELLER            )     Case No. 05-63536
                                            )
              Debtor.                       )

ORDER OVERRULING TRUSTEE'S OBJECTION TO
DEBTOR'S CLAIM OF EXEMPTION IN HOUSE AND LOT IN FAIR PLAY

The Chapter 7 Trustee filed an Objection to an exemption claimed by the Debtor in

a house and lot in Fair Play, Missouri, as his homestead.  This is a core proceeding under 28

U.S.C. § 157(b)(2)(B) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b),

157(a), and 157(b)(1).   For the reasons to be stated, the Objection of the Trustee is

OVERRULED.

Debtor Joseph Edward Mueller filed a voluntary Chapter 7 Bankruptcy Petition on

October 7, 2005.  He claims a homestead exemption in property located at 301 W. 3rd in Fair

Play, Missouri (the "Fair Play House").  According to his Schedules, the Fair Play House has

a value of $20,000, and a lien in the amount of $5,000.  He claims the $15,000 in equity

exempt under § 513.475 of the Missouri Statutes.

The Bankruptcy Code permits a state to opt out of the federal bankruptcy exemption

scheme.[1]  The State of Missouri has exercised this option.[2]  Missouri recognizes that

exemption laws are exacted for the relief of the debtor and are to be liberally construed in

---

[1] 11 U.S.C. § 522(b)(1).

[2] Mo. Rev. Stat. § 513.427.

favor of the debtor.[3]   Section 513.475 of the Missouri Statutes provides an exemption in

"[t]he homestead of every person, consisting of a dwelling house and appurtenances, and the

land used in connection therewith, not exceeding the value of fifteen thousand dollars, which

is or shall be used by such person as a homestead."[4]

The Trustee objected to the homestead exemption in the Fair Play House because he

had received information that the Debtor does not actually reside there; rather, the Trustee

asserts that an unidentified friend or some other person lives there.  Generally, in order to

claim a homestead exemption, a debtor must show both ownership and occupancy of the

premises.[5]  Occupancy, however, is not an absolute prerequisite to a claim of homestead

exemption if the debtor can establish that he or she has a bona fide intention of making the

premises a permanent residence.[6]  That intention must be gleaned from all the facts and the

circumstances, and not just the declarations of the parties.[7]

Further, a party who has abandoned a homestead can reestablish the homestead

---

[3] *In re Schissler*, 250 B.R. 697 (Bankr. W.D. Mo. 2000); *Murray v. Zuke*, 408 F.2d 486, 487 (8th Cir. 1969) (*citing Nephler v. Rowland*, 191 S.W. 1033, 1034) (Mo. Ct. App. 1917)); *see also In re Galvin*, 158 B.R. 806, 807 (Bankr. W.D. 1993) (homestead laws "should be construed with great liberality") (*citing Prouty v. Hall*, 315 S.W.2d 103 (Mo. Ct. App. 1930)).

[4] Mo. Rev. Stat. § 513.475.

[5] *In re Maloney*, 311 B.R. 525, 527 (Bankr. W.D. Mo. 2004) (*citing In re Schissler*, 250 B.R. 697, 700 (Bankr. W.D. Mo. 2000); *In re Dennison*, 129 B.R. 609, 610 (Bankr. E.D. Mo. 1991); *In re Robinson*, 75 B.R. 985, 988 (Bankr. W.D. Mo. 1987)).

[6] *Id.*

[7] *Id.*

through a renewed occupancy with an intent to remain.[8]  However, that renewed homestead

can only occur if the debtor occupies the premises, with the intent to remain, as of the date

of the bankruptcy petition.[9]  Therefore, the relevant date of occupancy and intent, for

purposes of determining whether the Debtor can claim a homestead in the Fair Play House,

is the date of the filing of the Petition, which was October 7, 2005.

According to the testimony at the hearing on the Trustee's Objection, the Debtor, who

is currently unmarried, was previously married to Leonardine ("Deana") Mueller.  The

Debtor and Deana have two sons, ages ten and five.  The Debtor also has two teenage

daughters from a previous relationship.  The Debtor and Deana lived at the Fair Play House

with the children for several years.  Sometime in approximately 2001, they purchased and

moved into a larger house located at 601 W. 3rd, which is down the street from the Fair Play

House.  They apparently kept the Fair Play House as a rental property.

The Debtor and Deana were divorced in 2003.  While the divorce was consensual,

there have been a number of court actions between the Debtor and Deana since the divorce.

In the divorce, Deanna was awarded the house at 601 W. 3rd, and the Debtor was awarded

the Fair Play House.  However, rather than moving into the Fair Play House at that time, the

Debtor moved into a home located at 5096 N. Farm Road in Springfield, Missouri, with his

then-girlfriend, Leah Birch.

In December of 2004 or January of 2005, a woman named Marcella Scurlock rented

---

[8] *In re Maloney*, 311 B.R. at 529.

[9] *Id.*

the Fair Play House. According to the Debtor, Ms. Scurlock lived there with her son until April or May of 2005. Around that same time, the Debtor and Leah broke up. He moved out of the house at 5096 N. Farm Road and, he testified, he began living at the Fair Play House at about that time.

The Debtor testified he has full custody of his teenage daughters. However, the daughters live with his parents in Strafford, Missouri because, he says, they are very bright children and prefer to attend school in Strafford, which has larger schools with more opportunities than the school they would attend if they lived in Fair Play.

The Debtor and Deana have joint legal custody of their two sons. Deana has primary physical custody. The Debtor has physical custody of the boys every other weekend. When the Debtor has physical custody of the boys, they all stay at the Debtor's parents' house. The Debtor testified that the girls have their own room at the Debtor's parents' house, but the Debtor's brother also occupies a bedroom there and, thus, all of the bedrooms at the parents' three-bedroom house are occupied. Consequently, when the Debtor has physical custody of the boys, he and the boys sleep on a hideaway bed in his parents' living room.

The Debtor candidly testified that, given the condition of the Fair Play House, it is not currently suitable for the children to live or stay there. Although the Debtor has obtained electrical service at the house, it has no running water and no operational central heating system. The Debtor testified he has recently tried to get the water turned on, but the person at the City Hall who makes such arrangements keeps irregular hours and he has been unable to make contact with that person. In the meantime, he retrieves buckets of water from his

neighbor's outdoor spigot so that he can flush the toilet. He heats the house using kerosene heaters which, he testified, give off soot and an odor of kerosene in the house. The Debtor testified that he plans to make improvements to the house, but admitted he did not know when he would be able to afford to make the house suitable for his children to stay there. After he makes some improvements, the girls will continue to live with his parents so that they can attend the schools in Strafford, but the boys could then stay with him at the Fair Play House on the visitation weekends. He hopes to make it suitable for the children this summer, but cannot be certain he will be able to afford the necessary improvements by then.

The Debtor testified that he currently spends approximately 3-4 nights per week at the Fair Play House. His work schedule varies quite a lot, but he testified he picks his children up and drives them to school most days. His testimony that he currently lives at the Fair Play House, at least a relatively significant part of the time, was corroborated by his ex-girlfriend, Leah Birch, who confirmed that he moved out of the Farm Road property in May or June of 2005, and, at the time told her he was moving into the Fair Play House because he could not afford to pay rent anywhere else. She said she started seeing the Debtor on a friendly basis again in about October of 2005 which is the month in which the bankruptcy case was filed, and that he told her he was living at the Fair Play House at that time. She said she visits him at the Fair Play House every other week or so and helps him clean the house there. She also testified that, on recent occasions when she has left the Fair Play House late in the evening, sometimes at one or two in the morning, he remained behind, presumably for the night. She does not visit him anywhere else and, as far as she knows, this is where he lives, except for

the times when he is visiting with his children at the parents' house every other weekend.

The Debtor's testimony was further bolstered by photographs of the interior of the Fair Play House which were taken in December of 2005 or January of 2006 and were admitted as evidence at the hearing.  The photos show that the house is in somewhat of a disheveled (but not unclean) state, with a make-shift bed on the floor in the living room, a kerosene heater, and buckets next to the toilet in the bathroom (as Debtor described were used to bring water to flush the toilet).  The photos also show a ladder, a hammer, and cleaning supplies lying about.  They also showed a man's clothing and shoes in the closet, a barbell with weights and a laundry basket near the bed, and coolers, food and drinking water sitting on the kitchen counter.  While living conditions in the house are far from ideal, the photos do corroborate the Debtor's testimony that he lives there a reasonable amount of time.

The Debtor denied the Trustee's allegation that he intends to live at his parents' house and stated that, even if he did wish to live there, he could not do so because all of the bedrooms are occupied.  He stated that he fully intends to live at the Fair Play House, and nowhere else, and that he hopes to make it suitable for the children as soon as he is able.  He also testified that, if he could not live at the Fair Play House, he has nowhere else to live, cannot afford to pay rent, and would be forced to live out of his Jeep.

The Trustee called several witnesses who each testified that they were appearing at Deana's request and that, as a general matter, said they almost never see the Debtor at the Fair Play House.  Specifically, the Trustee called Edward D. Morrison, the Chief of Police

for Fair Play.  He testified that Fair Play has 425-428 citizens, depending on what is going

on at the time, that he is the only police officer for the town, and that he pretty much knows

everyone in the town, including the Debtor and Deana.  He stated he might drive by the Fair

Play House as much as eight times per eight-hour shift and that he has not seen the Debtor

at the Fair Play House in the last six months, although he testified he had arrested the Debtor

there for violations of what he referred to as an *"ex parte* order"* related to the divorce with

Deana.  As far as he is aware, Marcella Scurlock (the above-mentioned renter) and her son

live there, however.

The Trustee also called Ernest Phillips, a neighbor who lives about half a block from

the Fair Play House, at 206 W. 3rd.  He testified he is familiar with the Debtor and his vehicle

and that he walks by the Fair Play House at around 8:00 a.m. every day on his way to the

post office.  Mr. Phillips testified that he saw the Debtor relatively recently at a courthouse

when  Mr. Phillips' wife testified in favor of Deana in a state court hearing involving what

he also  referred to as an "*ex parte* dispute" between the Debtor and Deana.  However, other

than one occasion in January of this year, he has not seen the Debtor at the Fair Play House.

As far as he is aware, a woman, presumably Marcella, lives there.

Deana's sister, Lynette Hare, also testified.  She testified she lives at 109 N. Walnut

in Fair Play and that she can see the Fair Play House from her house.  She testified she has

not seen the Debtor at the Fair Play House in a couple of years.  She also said she spoke with

the Debtor at a cross country track meet in Strafford in the Spring of 2005 and that he

indicated to her at that time that he was living in a trailer in Strafford.  She also testified she

saw a woman, again presumably Marcella, living at the Fair Play House, although she did not specifically testify as to when she last saw Marcella there.

Finally, Deana testified she now lives in Bolivar, Missouri. She testified that, pursuant to the custody arrangement, the Debtor is required to notify the state court if he moves and that she and the Debtor have had many conversations about where he is living because she is concerned about where her boys are staying when he has physical custody of them. She testified that the Debtor told her he lived in Strafford for the last year. She stated she believes he lives in trailer on Highway 44 in Strafford and that this is where the boys stay when they visit the Debtor. She said she is not aware that the boys stay at their grandparents' house. She also testified she drives by the Fair Play House three to four times a week, has peered into the windows, and she never sees the Debtor there. She also believes Marcella Scurlock lives there.

The Trustee presented several items of documentary evidence as to the Debtor's residence. The first item was a letter dated October 29, 2004, from the Debtor and Leah, who was his girlfriend at that time, to Deana, advising her that his address had changed to 5096 N. Farm Road in Springfield, Missouri. That is consistent with testimony that the Debtor and Ms. Birch lived there together before their relationship broke up and before the bankruptcy case was filed. The second item was the Debtor's 2004 federal and state income tax returns, prepared by an income tax preparer, dated January 26, 2005, on which the Debtor listed the 5096 N. Farm Road address as his address. The next item was a copy of a certified mail receipt indicating that the Debtor signed for a certified letter from Deana on February 24,

2005, at the 5096 N. Farm Road address.  In addition, the Trustee submitted a letter dated

February 7, 2006, from the Trustee to the Debtor addressed to the Fair Play House which was

returned to the Trustee by the post office as being "unable to forward," and "moved left no

address."  The Trustee also submitted some photographs of the Fair Play House with a black

car, presumably Marcella's car, parked in the front.

As to the evidence of his residence in October of 2004 to February of 2005, I find

those documents have limited relevance here, in view of the fact that the relevant date is

when the Petition was filed and, further, that the Debtor testified he moved into the Fair Play

House in May of 2005, which was after the dates of those documents.  As to the February 7,

2005 letter that was returned to the Trustee by the post office, the Debtor credibly testified

that, because he filed two change of address notices with his local post office within eighteen

months, there is some confusion at the post office and he is having trouble receiving his mail

at any address.

I further find the Debtor's testimony to be credible that he moved into the Fair Play

House in May of 2005 after he broke up with Leah, that he intended then and when he filed

his bankruptcy Petition to make that property his homestead, and that he occupies that house

as his homestead, particularly as corroborated by Leah's testimony and the photographs of

the interior of the house.  I find the testimony of the other witnesses who said they rarely, if

ever, see him there to be outweighed by the testimony that he has an erratic work schedule

and he often takes his children to school in the mornings, and, more importantly, his

testimony that he does live there, as supported by both the documentary evidence offered and

9

the testimony of Ms. Birch.  In addition, the fact that the Debtor does not consider the house

to be currently suitable for his children does not contradict the evidence that he lives there

and intends it to be his homestead.  And, the fact that he cannot now identify the source of

funds to make the property more suitable does not mean that he does not intend to continue

living there.

I therefore find, based on the evidence and testimony presented at the hearing, that

the Debtor occupied the Fair Play House as his residence as of October 7, 2005, when he

filed his Petition, and that he currently occupies it as his home.  In addition, I find that the

Debtor intends to continue to occupy the Fair Play House as his homestead and that he

intends to make improvements so that the children can stay there.  Therefore, the Trustee's

Objection to the Debtor's claim of homestead in the property located at 301 W. 3rd in Fair

Play, Missouri, is OVERRULED.

IT IS SO ORDERED.



/s/ Arthur B. Federman
Bankruptcy Judge


Date: February 24, 2006